FILED
2015 Apr-30  PM 06:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **TOMMY MURRAY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No.: 2:13-cv-822-KOB** |
| **BIRMINGHAM BOARD OF** | ) | |
| **EDUCATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT BIRMINGHAM BOARD OF EDUCATION'S
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**COMES NOW** defendant Birmingham Board of Education and files this Brief in support of its Motion for Summary Judgment, arguing under FLSA, the plaintiffs cannot prove a case, including because they signed and certified their time records to be correct and were paid according to their representations, that they have no evidence of dates or hours they claim to have worked, and they never told anyone of these claims.

# **TABLE OF CONTENTS**

NARRATIVE STATEMENT OF UNDISPUTED FACTS. . . . . . . . . . . . . . . . . . 1

    Narrative summary paragraphs for each plaintiff, listed alphabetically:

        Batain, Clarence.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶20

        Carr, Daryl.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶17

        Clark, Anita. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶24

        Dunner, Michelle.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶30

        Freeman, Juanita. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶29

        Harris, Tammra. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶31

        Henry, Andraina. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶25

        Holt, Wanda.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶32

        Jackson, Bridgette.. . . . . . Subject to a Motion to Dismiss for Want of Prosecution

        Murray, Tommy.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶16

        Parker, Geraldine.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶23

        Phillips, Teresa.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶27

        Scott, Andrea (Mixon).. . . . . . . . . . . . . . . . . . . . . . ¶¶33-35

        Smith, Rhonda.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶19

        Stallings, Andrea.. . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶¶21-22

        Thomas, Valerie.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶28

        Williams, Julia.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶18

        Yancey, Rhonda.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ¶26

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    THE BIRMINGHAM BOARD OF EDUCATION IS ENTITLED TO
    SUMMARY JUDGMENT AS TO ALL PLAINTIFFS' CLAIMS
    UNDER THE FAIR LABOR STANDARDS ACT. . . . . . . . . . . . . . . . . . . 15

    A.    Summary Judgment Is Due to Be Granted to the Board as
        Plaintiffs Failed to Demonstrate Willful Violations of
        FLSA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.    Summary Judgment Is Due to Be Granted to the Board on
        All Individual Claims Because They Cannot Show
        "Overtime Hours" Worked and Cannot Show the Board
        Had Knowledge They Were Working Overtime.. . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## NARRATIVE STATEMENT OF UNDISPUTED FACTS

1.     The policy of the Birmingham Board of Education is to pay overtime in compliance with FLSA. (Watts Affidavit, Doc. 38, Exh. 3).

2.     The Board provided training sessions on FLSA for supervisors, posted notices in the various schools, and sent numerous emails to supervisors about compliance with FLSA. (Witherspoon Affidavit, Doc. 50, Exh. 1, Attachments 1-3).

3.     The Birmingham Board of Education held training seminars, and employees were required to sign in and document their participation. (Appendix E, Doc. 50, Exh. 8).

4.     Each principal was required to sign a notice that was put in their personnel file that they were aware of the polices involving overtime, uninterrupted breaks, prior approval of overtime, and compliance with FLSA. (Witherspoon Affidavit, Doc. 50, Exh. 1, Attachment 3).

5.     The Board has provided the Court with time records of each plaintiff who claims to have worked overtime. (Plaintiffs' Timesheets, Doc. 50, Exhs. 33-51).

6.     Included in the Board's policy manual were directives on FLSA, and numerous memos were sent to employees regarding FLSA, specifically not working off of the clock and taking a duty-free break. (Witherspoon Affidavit, Doc. 50, Exh. 1; Watts Affidavit, Doc. 50, Exh. 3, Attachments+).

7.     Each employee is responsible for entering his or her time by scanning

their palm each day. (Watts Affidavit, Doc. 38, Exh. 3).

8.      Employees are required to obtain advanced permission to work additional hours or to deviate from their scheduled work hours. *Id.*

9.      At the end of the month, the electronic scans would produce timesheets that would reflect the work performed for the entire month, and each employee was required to sign the timesheet verifying accuracy of those sheets, and that they agreed that was the time they had worked. *Id.*

10.     By completing and signing their timesheets, employees had ample opportunity to correct or report additional hours worked. *Id.*

11.     Each plaintiff's supervisor also reviewed timesheets for accuracy and signed the sheets as well acknowledging accuracy. *Id.*

12.     The timesheets were then sent to the Board's Payroll Department for payroll processing. *Id.*

13.     Paychecks were issued to each employee based on the time and any applicable leave reported by each employee. *Id.*

14.     The plaintiffs' timesheets show entries for regular time, straight time, vacation, holiday pay, sick leave, or absences from work.  (Plaintiffs' Timesheets, Doc. 50, Exhs. 33-51). "Straight time" covers any hours the employee worked over their scheduled "regular hours" but under 40 hours per week. *Id.*

15.     No managerial employee of the Birmingham Board of Education had any

knowledge that the plaintiffs allegedly did not receive a duty-free lunch or worked overtime which was not reflected on his or her timesheets until the present lawsuit was filed. *Id.*

16.   **TOMMY MURRAY** is a custodian (Murray Depo., Doc. 39, Exh. 10, p. 3); he has been a head custodian  since 1991 (*Id.*); his schedule was from 6:00 a.m. to 3:30 p.m. with a 30 minute lunch break (*Id.*); he has an assistant who works from 9:30 am until 6:00 p.m. (*Id.* at p. 10); he claims to have worked on Saturdays but that he did not clock in on those days. (*Id.* at p. 12); he also acknowledged in his testimony that he was aware any overtime must be approved in advance (*Id.* at p. 13); he testified that he used the scanner in the office and understood that he was to scan in the mornings, scan out on his break, scan back in, and then scan out in the afternoon (*Id.* at p. 17); he understood the scanner and was aware that the palm scan generated his timesheet, that he was to approve and sign the timesheet, and then it went to the payroll department (*Id.* at p. 17); he knew about FLSA's requirements, as he was part of prior FLSA litigation against the Birmingham Board of Education, and that he received a $500.00 check from that litigation (*Id.* at pp. 72, 78); when asked if he maintained any independent list or kept a notepad, he stated he threw it away a long time ago (*Id.* at p p. 72, 78); when asked if he had a calendar or list, he responded, "No" (*Id.* at p. 78); and when asked if he was alleging that the Board owed him overtime and he had no idea how much overtime, he responded, "No, ma'am, I

don't" (*Id.*).

17. **DARYL CARR** was a Child Nutrition Program worker (Doc. 39, Exh. 2, Carr Depo. p. 93); Mr. Carr said that he had worked hours prior to and after his scheduled work hours, 7:30 a.m. to 2:30 p.m. and that he also did not receive his uninterrupted lunch break (*Id.*); he was aware that the palm scan was the method that showed the number of hours that employees worked (*Id.* at p. 55); he acknowledged signing the timesheet and that it reflected what he would be paid (*Id.*); when asked if he had ever told anyone that he was working time for which he was not being paid, Mr. Carr responded that he had not (*Id.* at p. 50); and when asked if he had any records of times he claimed he worked but was not paid, Mr. Carr said he did not have any independent records of the time except for a mental note (*Id.* at p. 47).

18. **JULIA WILLIAMS** is a Child Nutrition Program manager (Williams Depo., Doc. 39; Exh. 17, p. 15); her hours are from 6:00 a.m to 2:30 p.m. (*Id.*); she said that she understood she was to take a 30 minute break, and her break was scheduled from 9:00 a.m. to 9:30 am. (*Id.*); she said that sometimes she took her full breaks and sometimes it is just part of her break (*Id.*); she testified that occasionally her grocery delivery may be late, and she will have to stay (*Id.*); however, she could not identify specific days or times when that occurred (*Id.* at p. 22); she did tell her principal about one specific incident when she had to stay late once for a truck delivery (*Id.* at p. 28); she understood the palm scan and that it transmitted to the

4

payroll department, and she understood that is what generated her timesheet (*Id.*); she further testified that she approved the timesheet and understood that the hours on the timesheet are the hours that she is  paid for (*Id.* at p. 30); she stated that the time clock that she scanned in was in the lunchroom, and that the principal did not know when she was coming and when she was going (*Id.*); and during her deposition, Ms. Williams was asked how the Board would know to pay her for overtime if nobody knows she is  working over time, and she stated, "Well, they don't know either" (*Id.* at p. 31).

19.     **RHONDA SMITH** is a Child Nutrition Program assistant manager (Smith Depo., Doc. 39, Exh. 14, p. 38); she acknowledged that when she received her timesheet, that she would sign it and it verified how many hours she worked (*Id*. at p. 38); she advised that she had taken paperwork home to work on, and when asked if the Birmingham School Board had any way of knowing that she was taking work home, she responded no (*Id*. at p.71); when asked if she told the CNP program director that she was doing paperwork at home, she responded she had not (*Id.*); she was asked if she kept any independent records, like a notebook or calendar, regarding claims that she worked hours she was not paid for, and she said she had not (*Id*. at p. 72); she also advised that she did not have any independent records of how long she had spent on paperwork that she alleges she took home (*Id.*);  and when asked how the Board would know what they owed her or if she had any witnesses, she said her

only witnesses would be her children (*Id.*).

20.   **CLARENCE BATAIN** was a custodian (Batain Depo., Doc. 39, Exh. 1, p. 13); his work schedule was 7:00 a.m. to 2:00 p.m. (*Id.*); when asked if he was aware of the Board's overtime policy, he said, "They don't have overtime" (*Id.* at p. 24); he testified that he understood the palm scan was how the number of hours worked were generated, and that would result in his paycheck (*Id.* at pp. 14, 28); he was aware he was to scan in in the mornings, out at his break, back in at the end of his break, and scan out in the afternoons (*Id.*); he understood that if for any reason he failed to scan, he would take proper authorization to the secretary, who would give him a form, his supervisor would sign it, and then he would return it to the secretary to correct his timesheet (*Id.* at p. 43); he stated in his testimony that he was encouraged to take his 30 minute uninterrupted break (*Id.* at p. 50); he testified that the hours shown when he scanned was "what he was owed" (*Id.* at p. 58); he testified that he kept no independent records of when he came in late, when he worked late, when left early, when he did not receive his lunch break (*Id.* at p. 59); he told the principal that he was not taking his lunch break and the principal advised him that he must take his 30-minute break (*Id.* at p. 57).

21.   **ANDREA STALLINGS** is a Child Nutrition Program manager (Stallings Depo., Doc. 39, Exh. 15, p. 29); when asked if she had ever told anyone that she worked overtime that she did not get paid for, her testimony was that it had

been three or four years ago since she had complained to anyone about time, but she had not made mention of it recently (*Id.*); when asked if her timesheet was an accurate reflection of the time she had worked, she responded it was. When asked about her timesheet, she stated that it was accurate (*Id.*); she also responded that she was aware that employees were not to work over their scheduled time (*Id.* at p. 36); and she stated that she took paperwork home, but that she never told her area supervisor that she took work home (*Id.* at p. 46).

22.     Stallings was paid overtime on several occasions. (Doc. 50, Exh. 40, Timesheets of Stallings, May, August, October, November of 2010; January, February, April, August, November, December of 2011; January of 2012; February, April, May of 2013).

23.     **GERALDINE PARKER** was a Child Nutrition Program manager (Parker Depo., Doc. 39, Exh. 11, p. 32); she retired in 2007 after working for 32 years (*Id.*); she was called back in to do some supply work as an acting CNP manager (*Id.*); she was familiar with the palm scan and stated that she knew that if she forgot to scan in, that she had to sign a paper, and the secretary would manually enter her time (*Id.*); she testified that no one asked her to come in early, and no one asked her to stay late (*Id.* at pp. 33-34); she was asked if she told anyone from the Board – the area supervisor, the CNP director or the principal – about working hours that she was not getting paid for (*Id.*); she said, "No," but that she had made phone calls, and

employees at the Davis Center who answered the phone said, "What are you still doing there?" (*Id.*); she testified those individuals she talked to did not know what time she came in or what time she was supposed to get off (*Id.*); she was aware that the Board of Education did not want employees working overtime and that the rule was to come in at your designated time and leave at your designated time (*Id.* at pp. 35-36); she was asked about the timesheet that was generated based on the palm scans and confirmed that she reviewed it and that she signed it once a month (*Id.* at p. 42); and she testified that she understood that was what was being sent to payroll, and that was what her paycheck would be based on (*Id.*).

24.   **ANITA CLARK** was a Child Nutrition Program manager (Clark Depo., Doc. 39, Exh. 3, p. 12); her regular hours were 6:30 a.m. to 3:00 p.m (*Id.* at p. 12); she was aware that she was supposed to take a 30 minute break (*Id.* at p. 17); she acknowledged she was aware that there was a policy regarding overtime (*Id.* at p. 22); when asked if she had maintained any independent records of the time she says she worked but was not paid for, she said she did not have any such records (*Id.* at p. 24); and she acknowledged that the supervisor would have no way of knowing what hours she worked except for looking at her timesheet (*Id.* at p. 26).

25.   **ANDRAINA HENRY** was a Child Nutrition Program worker (Henry Depo., Doc. 39, Exh. 8, p. 10); her scheduled work hours were 7:30 a.m. to 2:00 p.m. (*Id.*); she was aware that she was supposed to take a 30 minute uninterrupted break

(*Id.* at p. 11); she knew that when she arrived in the morning she was to scan her palm, scan in and out on her lunch break, and scan out at the end of the day (*Id.* at p. 38); she advised if the scanner did not work, she signed a paper with the correct hours and gave it to the secretary (*Id.* at pp. 39, 42); she acknowledged that she had never questioned payroll about her timesheet (*Id.* at p. 43); nor did she speak with anyone at the Board about overtime (*Id.* at p. 48); she advised that she signed her timesheet every month, and that was how she would be paid for that month's work (*Id.* at p. 49); and she said she had made no list of the various times she allegedly worked overtime, or kept any independent records (*Id.* at p p. 83-84).

26.     **RHONDA YANCEY** was employed as a Child Nutrition Program manager (Yancey Depo, Doc. 39, Exh. 18, p. 9); she was aware that she was supposed to take a 30 minute break, which was scheduled between 9:30 a.m. and 10:00 a.m. (*Id.* at p. 13); she acknowledged that she was aware that the palm scan was how her payroll sheet was generated (*Id.* at pp. 29-30); she signed her payroll sheet and knew that she was verifying that it reflected the number of hours she worked (*Id.*); she was also asked how, if she did not tell anyone that she had worked those hours, could she expect to be paid and she responded she did not know (*Id.* at p. 34); Ms. Sailes, the Director of Child Nutrition Program, told her that she could not work off the clock (*Id.* at p. 35).

27.     **THERESA PHILLIPS** is employed as a Child Nutrition Program

manager (Phillips Depo., Doc. 39, Exh. 12, p. 37); she signed time card reports certifying that her time was accurate that stated "I agree this accurately reflects my time and I have not been requested to falsify this timesheet" (Doc. 50, Exh. 52, p. 13); she discussed not receiving a step raise with her principal, but did not discuss overtime (Phillips Depo., Doc. 39, Exh. 12, p. 31); she initially stated she made a "bank run" on her way home (*Id*. at p. 34); but later she stated that she made the deposit during school hours (*Id*. at pp. 35-36); and when asked if she kept records, an independent tally, notebook, or calendar, she responded "No" (*Id*. at pp. 36-37); her time card reports also reflect that she received overtime pay in the months of April, September, October, November and December of 2012, as well as January, February, March, April and May of 2013 (Doc. 50, Exh. 52).

28. **VALERIE THOMAS** is a Child Nutrition Program worker (Thomas Depo., Doc. 39, Exh. 16, p. 33); she was under the assumption that any hours that she worked in her excess of scheduled hours per day should be paid at time and a half, even if less than 40 total hours worked per week (*Id.*); she testified that when she told her principal that she thought she should get paid for more hours, the principal, Shirley Graham, told her do not work off of the clock (*Id*. at p. 36); she also confirmed that when she signed the timesheet, she knew that reflected what she would be getting paid for (*Id*. at p. 39); she admitted that unless the payroll department had heard through word of mouth, they would not know that she thought

10

that she should be paid more; she was a six hour employee and her regular schedule was from 8:30 a.m. until 3:30 p.m. (*Id*. at p. 39); and Ms. Holt, a co-worker of Thomas, said she was certain that everyone at Woodlawn High School got their breaks (Holt Depo., Doc. 39, Exh. 9, p. 71).

29.   **JUANITA FREEMAN** was a Child Nutrition Program worker (Freeman Depo., Doc. 39, Exh. 6, p. 13); her regular hours to work were 7:30 a.m. to 2:00 p.m. (*Id.*); she was aware that she was to take a 30 minute uninterrupted break (*Id*. at p. 20); she never told anyone that she was not being paid for hours that she had worked (*Id*. at p. 64); she worked at different schools during the relevant time period, and she acknowledged that she never told either principal about unpaid time  (*Id*.); when she was asked if she had kept any records of overtime, Ms. Freeman said she had not (*Id*. at p. 118); she is aware that a timesheet was generated based on her palm scan (*Id.* at pp. 69-70); she signed and approved that as being accurate, but said that she should be paid for other hours that she worked, even though she can provide no evidence of that (*Id*.); and Ms. Holt, a co-worker of Freeman, said she is certain that everyone at Woodlawn High School got their breaks (Holt Depo., Doc. 39, Exh. 9, p. 71).

30.   **MICHELLE DUNNER** was a Child Nutrition Program worker (Dunner Depo., Doc. 39, Exh. 5, p. 20); her hours were 6:30 a.m. to 2:00 p.m. (*Id.*); she was aware that the palm scanner would show the time that she scanned in and out, and

that the timesheet would be calculated based on that time (*Id.* at p. 55); she understood that document would go to the payroll department, they would present it to her for her review, that she would sign it verifying her hours and that is how her paycheck would be generated (*Id.* at p. 56); and she testified she never told anyone she was working time that she was not being paid for (*Id.* at p. 56).

31.   **TAMMRA HARRIS** is a Child Nutrition Program worker (Harris Depo., Doc. 39, Exh. 7, p. 10); her regular work hours are 8:00 a.m. to 2:30 p.m. (*Id.*); she was aware that she was to take a 30 minute uninterrupted break and she was to scan in and out during that break (*Id.* at pp. 18-19); she testified that everyone in her lunchroom went on break at 10:30 a.m. (*Id.* at p. 20); she further testified when asked if she had told anyone at the Board that she was not getting paid for hours that she claimed to have worked, she responded, "No" (*Id.* at p. 47);  she was asked whether she ever reported to anyone that she was clocking out and continuing to work, and she responded that she did not (*Id.* at p. 48); she confirmed through her testimony that she understood that she would scan her palm which then calculated her time, sent it to payroll, and she received a timesheet to sign once a month (*Id.* at p. 47); she looked over this document, approved the number of hours, and agreed that this was her number of hours (*Id.*); she was aware that the Board did not approve overtime pursuant to a conversation with her manager (*Id.* at p p. 17, 51); she was asked if she ever reported to her principal that she was doing work for which she was not getting

paid and she said she had not told her principal (*Id.* at p. 86); she was also asked if she told Ms. Sailes, the Director of the Child Nutrition Program, that she was not being paid for the time she worked, and she responded that she did not (*Id.* at p. 88); and Ms. Holt, a co-worker of Harris, advised that the CNP manager at Woodlawn High School told people that it was break time, and Ms. Holt says she is certain that everyone at the school got their breaks (*Id.* at p. 71).

32.     **WANDA HOLT** is a Child Nutrition Program worker (Holt Depo., Doc. 39, Exh. 9, pp. 33, 35); she testified that she came to work at 7:00 a.m. (*Id.*); her timesheets show that she consistently clocked in at 8:00 a.m., then clocked in and out for her lunch break, and left at 2:30 p.m. (Timesheets of Holt, Doc. 50, Exh. 51); she testified that she never said, "I'm not signing this, it isn't right" (*Id.* at pp. 19-20); and when asked if she ever told the Board she was not getting paid, she responded she did not tell them (*Id.*); she testified that she never told anyone from the Board of Education that she worked overtime (*Id.* at p. 61); she was a six hour employee, and when asked if she at some point had her hours increased to 7 or 8 hours per day, she responded she did not think so (*Id.* at p. 60); she was aware that the Board of Education did not want people working overtime and acknowledged that she had always been told that to be the case (*Id.* at p. 18); she advised that her CNP manager pretty much told people that it was break time and she was certain that everyone at her school got their breaks (*Id.* at p. 71); and she testified she had never written any

notes or maintained any independent records of time she claims she worked for which she had not been paid (*Id.* at p. 55).

33.    **ANDREA SCOTT** (a/k/a Andrea Mixon; a/k/a Andrea Scott Mixon) was a bookkeeper at the Birmingham Board of Education (Doc. 39, Exh. 13, Scott Depo., p. 10); among her duties, she was responsible for making the bank deposit, answering the phone, enrolling students, and record keeping (*Id.*); Andrea Scott knew the employees were required to take a 30 minute break (*Id.* at p. 11); she was also aware that the hand scanner was the method by which her time was maintained (*Id.* at p. 13);  and she was also aware that her timesheet would show the number of hours she was paid for (*Id.* at p. 25).

34.    When asked if she ever kept an independent tally or record of the hours that she now claims that she worked, Ms. Scott responded that she did not (*Id.* at p. 22); regarding whether or not she ever told anyone with the Board that she was not getting paid the hours she was working, she responded that she only told that to the secretary (*Id.* at p. 30); and she acknowledged that no one ever ordered her to come in early or to do extra time (*Id.* at p. 79).

35.    Ms. Scott has a part-time job working basketball games after school (Scott Depo. p. 38); she received a totally separate check for that work (*Id.*); her hourly wage that she received for working basketball games was not the same as the hourly wage that she received when working in the office (*Id.* at p. 46); and even

though this was separate employment, Ms. Scott claims that she is owed overtime for working the basketball games (*Id.*).

## ARGUMENT

Plaintiffs have filed suit under the Fair Labor Standards Act ("FLSA"), alleging violations of its overtime provisions. The FLSA requires employers to provide compensation at one and one-half times an employee's regular rate of pay for all hours worked over forty in a work week. (29 U.S.C. § 297(a)(1)). Some plaintiffs, however, did not work over 40 hours per week, by their own testimony; they were scheduled for under 40 hours per week.

## THE BIRMINGHAM BOARD OF EDUCATION IS ENTITLED TO SUMMARY JUDGMENT AS TO ALL PLAINTIFFS' CLAIMS UNDER THE FAIR LABOR STANDARDS ACT.

### A.   Summary Judgment Is Due to Be Granted to the Board as Plaintiffs Failed to Demonstrate Willful Violations of FLSA.

Plaintiffs claim that they worked additional overtime for which they were not compensated. The claim is without merit. The Fair Labor Standards Act provides for a three-year statute of limitations for causes arising out of a willful violation of the FLSA.[1] The plaintiffs cannot avail themselves of the one-year extended statute of limitations unless they can demonstrate a willful violation of the FLSA by the Board, through evidence.

---

[1] 29 U.S.C. §255(b).

Even though the plaintiffs alleged a willful violation of the Act, summary judgment is due to the Board as to all claims premised on such. Plaintiffs bear the burden of showing by a preponderance of the evidence that the Board "either knew or showed reckless disregard of the matter of whether its conduct was prohibited by the statute."[2] Thus, plaintiffs must show either actual knowledge that the Board's conduct was prohibited by the FLSA or reckless disregard of same. Showing that the Board was incorrect or unreasonable is not enough to meet plaintiffs' burden, nor is the identification of conduct which is "merely negligent."[3]

In the case at bar, there is no evidence whatsoever of intentional or reckless conduct by the Board in failing to pay the employees overtime. On the contrary, the Board has shown that it paid employees the amount on their timesheets and made diligent efforts to ensure that employees were paid for all time they worked. The Birmingham Board of Education notified principals and supervisors through various memorandums and training that they were to ensure that employees took an uninterrupted lunch break, that they did not allow employees to work "off the clock," and that any overtime must be approved in advance. Each principal was required to sign a notice that was put in their personnel file that they were aware of these

---

[2] *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280 (11th Cir. 2008) *citing Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008) in turn *citing McLauglin*, 486 U.S. 128 (1988).

[3] *McLaughlin*, 486 U.S. at 133.

policies. The Board provided training sessions on FLSA and posted notices in the various schools. Such efforts are enough to show good faith and foreclose any possibility of a showing of willfulness. That showing of willfulness is the only way plaintiffs may utilize the extended three-year statute of limitations. Because plaintiffs cannot show by a preponderance of the evidence (or by any evidence for that matter) that the Board acted willfully, the two-year statute of limitations applies, and summary judgment should be granted to the Board for all wilfulness and third year claims.

  **B.** **<u>Summary Judgment Is Due to Be Granted to the Board on All Individual Claims Because They Cannot Show "Overtime Hours" Worked and Cannot Show the Board Had Knowledge They Were Working Overtime.</u>**

  Plaintiffs have asserted that they worked overtime for the Board for which they were not paid. Each of these plaintiffs' claims differ slightly depending on work sites and supervisors, but all of the claims generally are premised on allegations that these plaintiffs worked before and/or after their scheduled work hours, and/or did not receive a duty free lunch, but failed to report those hours on the timesheets that were signed and verified by each plaintiff.

  The plaintiffs worked at various schools and were scheduled to work a certain number of hours each day, but no employee was scheduled for more than 40 hours per week. Employee salaries were determined by a Board-approved salary schedule

and the monthly pay for each of these employees was based on the hours reflected in their timesheets. Plaintiffs do not claim that they were not paid for time, including any overtime, that was reported on their timesheets. Rather, these employees contend that they should be paid for additional time that they themselves did not include on their timesheets.

Clearly, the FLSA requires employers to pay overtime to employees who are employed more than forty hours per week.[4] In the context of the FLSA, the word "employed" loosely means work and is defined in the act as "to suffer or permit to work."[5] Under certain circumstances, "work not requested but suffered or permitted is work time."[6] However, work is only suffered or permitted if "an employer knows or has reason to believe that [an employee] is continuing to work."[7]

In order for plaintiffs to recover for uncompensated overtime work under the FLSA, each must show that (1) he or she worked overtime hours without compensation and (2) that the Birmingham Board of Education had knowledge, or should have had knowledge of this overtime work.[8] At all times, the burden is upon

---

[4] 29 U.S.C. § 207(a)(1); *Dade County v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997).

[5] 29 U.S.C. § 203(g); *Reich v. Dept. Of Conservation and Natural Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994).

[6] 29 C.F.R. §785.11.

[7] 29 C.F.R. §785.11.

[8] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Reich v. Dept. Of Conservation and Natural Res., State of Ala*, 28 F.3d 1076, 1082 (11th Cir. 1994).

each plaintiff to show by "definite and certain evidence," both that he or she worked the claimed overtime hours and the requisite knowledge by the employer.[9] It is undisputed that there is no "definite and certain" direct evidence of overtime hours worked without compensation by any of the plaintiffs. None of plaintiffs testified as to any concrete evidence of specific overtime worked on specific dates and times and the deposition testimony is replete with guesses and speculation about what employees would have worked or might have worked. As such, the plaintiffs are attempting to establish overtime worked (but not reported) by "just and reasonable inference."

There are times when a plaintiff may meet his or her burden of establishing the amount (but not the existence of) overtime worked without compensation by producing sufficient evidence to show as a matter of just and reasonable inference that he or she was improperly compensated; however, this relaxed burden of proof may only be employed when the employer's records are proven to be inadequate or inaccurate and only applies when the overtime has already been demonstrated to have been worked.[10] Under that approach, if the employee shows that time records are

---

[9]  *Reeves v. Int'l. Tel. and Tel. Corp*., 616 F.2d 1342, 1351 (5th Cir. 1980) ("[u]nder the Act, an employee who brings suit for unpaid overtime bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated") *(citing Anderson*, 328 U.S. 680 (1946)); *Donald v. Park & Fly, LLC*., 2011 WL 6027014 (M.D.Fla. 2001) (*citing Reeves*, 616 F.2d 1342).

[10] *Anderson v. Mt. Clemens Pottery Co., supra*.; *Etienne v. Inter-County Sec. Corp*., 173 F.3d 1372, 1375 (11th Cir. 1999) (burden shifting analysis only applies where "no records were kept

inaccurate or inadequate, the burden then shifts to the employer to show that the employee did not perform overtime work.[11] In cases such as this one, this burden shifting analysis does not apply because the Board has produced and maintained accurate and adequate time records, all of which contain plaintiffs' signatures certifying that "the above dates and times are a true and accurate record of my attendance at my job site and/or assignment."[12] Plaintiffs' claims cannot survive summary judgment because none have provided any specific evidence that the Board's time records are not accurate and, thus, a showing of overtime worked has to be definite and certain, as opposed to inferential.[13]

The Board has provided the Court with time records of each plaintiff who claims to have worked additional overtime. The Board has a system wherein each employee scans their palm upon their arrival, at lunch, and on departure. This scan generates a timesheet for each month. Employees are given these timesheets to review and sign. By completing and signing their timesheets, employees had ample opportunity to correct or report additional hours worked. Each plaintiff's supervisor

---

at all or no overtime was received"); *Diaz v. Jaguar Res. Group, LLC*, 649 F.Supp.2d 1343, 1361

[11] *See Anderson*, 328 U.S. at 687-88; *see also, Etienne v. Inter County Sec. Corp.*, 1999 WL 380322 (11th Cir. 1999).

[12] Depositions of Plaintiffs, as noted in Narrative Statement of Undisputed Facts. See time records for each plaintiff in evidence in support of this Motion.

[13] *See Arroyave v. Rossi*, 296 Fed. Appx. 835, 836 (11th Cir. 2008) (summary judgment for employer appropriate when plaintiff failed to produce "specific evidence that would refute the accuracy of defendant's [time] records").

also reviewed timesheets for any mistakes or errors that he or she had knowledge of and signed the sheets as well. The timesheets were then sent to the Payroll Department for payroll processing. Paychecks were issued based on the time and any applicable leave reported by each employee. If overtime was shown, it was paid. A review of plaintiffs' timesheets shows numerous entries for sick leave, vacation, personal leave, or other absence from work. Timesheets also show "straight time," which is time worked in excess of scheduled hours but which is less than 40 hours.

The relaxed evidentiary standard (the "reasonable and just inference" standard) simply does not apply when records are adequate and accurate, as is the case here.[14] As plaintiffs have not met their burden of showing by direct and certain evidence that overtime was worked but not paid for and the relaxed evidentiary burden triggered by a showing of inadequate time records is not available to them, they cannot meet

---

[14] In Etienne, the Court explained as follows:

> Rather, this circuit has employed the burden-shifting analysis in situations where no records were kept at all or no overtime was recorded. See, e.g., Amcor, Inc. v. Brock, 780 F.2d 897, 900 (11th Cir.1986)(no records kept); Olson v. Superior Pontiac-GMC, Inc., 776 F.2d 265, 267 (11th Cir.1985) (employer's time records did not correspond with pay periods); Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 470 (11th Cir.1982) (employer unable to find "many records" and payroll department employee testified to regularly falsifying records); Skipper v. Superior Dairies, Inc., 512 F.2d 409, 411 (5th Cir.1975)(no records kept); Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 828 (5th Cir.1973)(employees kept time records but were not permitted to report overtime worked except in rare situations); Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721, 724 (5th Cir.1961)(no records kept).

173 F.3d at 1375.

the first part of the *prima facie* test to sustain their overtime claim and those claims are due to be dismissed without the need to resort to the second part of the test.

However, even if plaintiffs can show that they worked overtime without compensation (which they cannot), they must also prove that the Board had knowledge or should have had knowledge of this overtime work.[15] The record is devoid of evidence that shows any direct or actual knowledge of uncompensated overtime work by the Board and the evidence, in fact, confirms that there was no such knowledge. Accordingly, plaintiffs' claims may only be sustained if they can show constructive knowledge – that the Board should have had knowledge – of the overtime work.[16] Plaintiffs cannot meet that burden either, because the Board cannot be deemed to have knowledge of uncompensated overtime when an employee scans their palm in and out and signs timesheets showing such overtime did not occur.[17]

---

[15] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Reich v. Dept. Of Conservation and Natural Res., State of Ala,* 28 F.3d 1076, 1082 (11th Cir. 1994).

[16] *See Debose v. Broward Health*, 2009 WL 4884535 (S.D.Fla 2009); *Kellar v. Summit Seating*, Inc., 664 F.3d 169, 177-78 (7th Cir. 2001).

[17] *Gaylord v. Miami Dade County*, 78 F.Supp.2d 1320 (S.D. Fla. 1999); *Whitaker v. Pac. Enter. Oil Co.*, 956 F.2d 1170, 1992 W.L. 44729 (10th Cir. 1992) (unpublished opinion)(summary judgment for employer affirmed when employee claimed additional overtime after being paid for many hours of overtime); *citing Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (employee estopped from claiming more hours that those submitted in timesheets, as she "could not profit from her own wrong in furnishing false data to the employer"); *Newton v. City of Henderson*, 47 F.3d 746, 748-49 (5th Cir. 1995) (reversing FLSA award based on constructive knowledge where employer paid employee based on timesheets); *see also Davis v. Food Lion*, 792 F.2d 1274, 1277 1278 (4th Cir. 1986) (affirming judgment for employer where employee falsified time records to under report time); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (when employee has no knowledge employee is working overtime and that employee either fails to notify the employer or deliberately prevents the employer from acquiring the overtime

The undisputed evidence shows that plaintiffs' supervisors had no knowledge of overtime worked and that palm scans or timesheets did not show additional overtime worked.   While the procedures and practical protocols for each group of employees varies slightly, all plaintiffs utilized the same system and timesheet and all verified the accuracy of the reported hours. Further, the record is devoid of evidence that the Board had any knowledge of unreported overtime, and there is no evidence that timesheets were altered or that employees were told that they could not be paid for overtime that was worked. Instead, each employee claims that he or she, unbeknownst to his or her supervisor, worked more hours than those reported and verified on their timesheets. A closer look at individual claims and testimony confirms that the Board relied on the time records certified by plaintiffs and that plaintiffs did nothing to alert the Board that work was being performed which was not included on those certified timesheets. In fact, in most cases, the plaintiffs testified that they knew that the Board could not pay them if work was not reported and despite that knowledge, timesheets now contended to be incorrect were purposefully submitted anyway.

The plaintiffs can be generally grouped into four categories: (1) custodian; (2) Child Nutrition Program managers; (3) Child Nutrition Program workers; and (4)

---

worked, the employer's failure to pay for the overtime hours is not a violation of § 207); *Nero v. Hosp. Auth. of Wilkes County*, 86 F.Supp.2d 1214, 1231-32 (S.D. Ga. 1995) (employee was estopped from her claim to additional overtime when she reported some overtime on timesheets but later claimed she worked more).

secretary/bookkeepers. All plaintiffs in each category acknowledged they were aware of the Board's policy regarding overtime. None of the plaintiffs sought pre-approval for any overtime. Each plaintiff testified that they were aware they were to work their scheduled start time each day, take 30 minutes for lunch, and leave at their scheduled end time. No plaintiff can provide any independent records or documentation of hours they worked, except for their palm scan and timesheets. In actuality, many of the plaintiffs were scheduled to work well under 40 hours per week as the timesheets of Daryl Carr, Rhonda Smith, Linda Mitchell, Andraina Henry, Valerie Thomas, Juanita Freeman, Michelle Dunner, Tammra Harris, and Wanda Holt reflect. Timesheets also reflect that if plaintiffs worked over 40 hours a week, they were paid time and a half. Some plaintiffs were admittedly confused and thought "overtime" pay was required for any time worked over their scheduled hours, even if they were only 30-hour per week employees. But the FLSA does not say such; the employees must work over 40 hours to bring an FLSA suit.

Descriptions of conduct, either general or specific, which could constitute willful conduct by the Board are clearly absent from the facts. The Board actually held training seminars on FLSA. (Appendix E, Doc. 50, Exh. 8). Included in the Board's policy manual were directives on FLSA, and numerous memos were sent to employees regarding FLSA. (Witherspoon Affidavit).

24

## CONCLUSION

For the reasons stated, the defendant seeks summary judgment.

Respectfully submitted,

*s/ Teresa B. Petelos*
Teresa B. Petelos (ASB-8716-L66T)
tpetelos@boardmancarr.com

*/s/ Mark S. Boardman*
Mark S. Boardman (ASB-8572-B65M)
*mboardman@boardmancarr.com*

**OF COUNSEL**:
Boardman, Carr, Bennett, Watkins, Hill & Gamble, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211
Telephone: (205) 678-8000
Facsimile:  (205) 678-0000

## CERTIFICATE OF SERVICE

I do hereby certify that I have on **April 30, 2015** electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all Counsel of record, and I have mailed the same to non-CM/ECF participants via United States Mail properly addressed and first class postage prepaid, to wit:

Jerome Tucker, Esq.
2015 First Avenue North
Third Floor
Birmingham, Alabama 35203

*s/ Teresa B. Petelos*
Of Counsel